**Donald GREEN, Petitioner,**

v.

**Dennis VACCO, Attorney General of the State of New York, Respondent.**

No. 96–CV–6174L.

United States District Court,
W.D.New York.

April 30, 1997.

Donald Green, Florence, CO, pro se.

Donna Milling, Erie County District Attorney's Office, Buffalo, for Respondent.

## DECISION AND ORDER

LARIMER, Chief Judge.

Pursuant to 28 U.S.C. § 2254, *pro se* petitioner Donald Green ("Green") filed the instant petition for habeas corpus relief in this Court on March 27, 1996. Green challenges his November 14, 1989 conviction in Erie County Court of Murder in the Second Degree.

Green asserts two constitutional grounds for relief: first, that he was deprived of his Fourteenth Amendment right of due process because the prosecution failed to disclose promises of monetary benefits to its main witness in connection with an agreement to attempt to enroll him in either the state or federal witness protection programs; and second, that he was deprived of his Sixth Amendment right to an impartial jury because one juror misrepresented her criminal record during *voir dire.*

## PROCEDURAL HISTORY

On February 20, 1990, pursuant to N.Y.Crim. Proc. Law § 330.30, Green sought post–conviction relief in two separate motions to set aside the verdict. Both of petitioner's motions were denied after post–trial hearings. On February 8, 1991, Green was sentenced to a state prison term of twenty–five years to life.

On February 5, 1993, the Appellate Division, Fourth Department, unanimously affirmed Green's conviction. *People v. Green,* 190 A.D.2d 1078, 594 N.Y.S.2d 1018. In a certificate issued on April 27, 1993, Chief Justice Judith H. Kaye denied Green leave to appeal to the New York State Court of Appeals. *People v. Green,* 81 N.Y.2d 971, 598 N.Y.S.2d 772, 615 N.E.2d 229.

Subsequent to and separate from his state conviction, Green was prosecuted in federal court. On March 30, 1994, after a lengthy trial in the United States District Court for the Western District of New York (Curtin, J.), Green was convicted on 27 drug–related counts. Green was sentenced on July 29, 1994, on four of the counts to four concurrent life terms and received several lesser sentences on the remaining counts. The sentences ran consecutive to his New York State murder sentence. The judgment was affirmed by the Second Circuit on March 27, 1996. *Aff'd sub. nom. United States v. Workman,* 80 F.3d 688 (2d Cir.1996). Green is currently serving his sentences at the federal maximum security institution at Leavenworth, Kansas.

Because the state does not contend that Green failed to exhaust his state remedies, I will consider the petition on its merits. For the reasons that follow, the petition is dismissed.

## FACTS

On the afternoon of October 25, 1988, Larnell Cottrell was helping two women unload groceries from a car parked in front of 143 Krettner Avenue in the City of Buffalo. As the three stood near the curb, one woman heard what she described as "two pops," and saw Cottrell fall into the street. Cottrell died shortly thereafter, and a coroner testified that Cottrell died of gunshot wounds to his body.

Because the two women did not see the actual shooting, the prosecution's case hinged on the eyewitness testimony of two other witnesses who identified Green as the perpetrator. One of those witnesses, James Wright ("Wright"), followed Green from the scene and identified him later that day from a photographic array as the perpetrator.

On the day of Cottrell's murder, Wright was on Krettner Avenue making deliveries for his church when he noticed people to his right unloading groceries. Wright heard a scream and then saw a man, later identified as Green, run out into the street in front of Wright's van. Wright testified that he also saw a second man running on the sidewalk, parallel to Green. Thinking that the disturbance was related to a purse-snatching, Wright, who was still in the van, followed Green down Krettner Avenue and around a corner.

Green and his companion, positioned as before, continued to run until they reached the next corner, where they turned right onto another street and approached a car parked on the right corner of that intersection. As Green approached the car, he turned and pointed what Wright called "this great big black gun" at the oncoming Wright. Wright identified Green in court as the man who confronted him with the gun.

On August 29, 1989, shortly before Green's trial was to begin, two unidentified men drove up to a car that was being driven by Wright and fired several shots into the driver's side door. Following this attempt on his life, Wright told the police, for the first time, about prior acts of violence directed at him and his family in the preceding weeks. He also told the police that he had been approached by an individual who said he was acting as petitioner's intermediary. Because of these threats, Wright and his family were placed in protective police custody and then relocated to an area outside Western New York, all at state expense of approximately $1,000 per week. These facts were disclosed in open court by the prosecution at a pretrial court proceeding on September 8, 1989.

In a post-trial hearing, the state trial court determined that the prosecutors failed to disclose that they had promised Wright that they would attempt to enroll him in either the state or federal witness protection program, and also that they had failed to disclose that they had promised Wright certain monetary benefits in connection with this attempt. In particular, the prosecution had told Wright that as much as $100,000 to $200,000 might be expended in order to ensure that the Wright family's lifestyle would continue to be comparable to that which they had been forced to leave behind in Buffalo. As it turned out, this never happened. On February 8, 1990, nearly three months after Green's conviction, the prosecution informed Wright that their efforts to enroll him in a witness protection program had failed, but that the state had authorized a one-time grant of $25,000 to assist in the relocation of Wright and his family.

The trial court and, on appeal, the Appellate Division, determined that the prosecution's failure to disclose the above information did not warrant reversal of Green's conviction.

During *voir dire* at Green's trial, Juror Debra Tyler ("Tyler") was asked on a juror questionnaire whether she had ever been convicted of a crime. She responded that she had not, although in fact she had been arrested twice for shoplifting and had also pleaded guilty to a misdemeanor charge of welfare fraud. Tyler admitted in a post-trial hearing that she knew at the time of *voir dire* that she had been arrested and accused of a crime, but she asserted that her answer came on the advice of her attorney concerning the disposition of her charges, and that her verdict was not affected by outside influences. The court accepted Tyler's explanation and declined to award Green a new trial.

## DISCUSSION

As the instant petition is one for habeas corpus, Green must demonstrate a violation of his federal constitutional rights in order to prevail. 28 U.S.C. § 2254(a).

### A. The Alleged Brady Violation.

Petitioner contends that his Fourteenth Amendment due process rights were denied because the prosecution failed to disclose that it had promised Wright, its main witness, that it would attempt to enroll him in either a state or federal witness protection program, and also that it promised Wright monetary benefits in connection with those attempts.

█ In *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the Supreme Court held that the prosecution cannot withhold, upon a request by the defense, evidence that is material to the defendant's guilt or punishment. After more than 30 years of *Brady* jurisprudence, this seminal case and its progeny now stand for the proposition that the prosecution violates a defendant's due process rights when it suppresses evidence that, had it been disclosed to the defense, would have created the reasonable probability of a different result at trial. The critical question, then, is whether in the absence of that evidence the defendant still received a trial resulting "in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419 at 434, 115 S.Ct. 1555 at 1566, 131 L.Ed.2d 490 (1995); *see, e.g., United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

█ Even if the defendant could have used the disputed evidence in some way as to actually create the reasonable probability of a different result at trial, as the Second Circuit wrote in *United States v. LeRoy*, 687 F.2d 610 (1982), *cert. denied*, 459 U.S. 1174, 103 S.Ct. 823, 74 L.Ed.2d 1019 (1983), "[e]vidence is not 'suppressed' if the defendant either knew ... or should have known of the essential facts permitting him to take advantage" of such evidence. 687 F.2d at 618, *see also United States v. Stewart*, 513 F.2d 957, 960 (2d Cir.1975), *United States v. Zackson*, 6 F.3d 911, 919 (2d Cir.1993).

█ Applying these principles to the facts of the instant case, Green's petition for a writ of habeas corpus on this issue must be dismissed.

The undisclosed information did not differ significantly from the information already disclosed to the defense. Defense counsel had been informed that because of the threats made against Wright, he and his family had been moved and put in protective custody at expense to the prosecution of $1,000 per week. Because of the inflammatory nature of the threats against Wright, the trial court precluded the prosecution from developing that evidence in its opening statement (Transcript for Oct. 31, 1989 at 5) and in its direct case.

Although aware of Wright's protective custody status, defense counsel did not cross-examine Wright on this information, no doubt out of concern that such cross-examination might hurt his client by opening the door for the prosecution to develop before the jury the facts that necessitated Wright's protective custody.

It strains credulity to suggest now that defense counsel would have questioned Wright about his potential future witness protection status and the promises made to him concerning the costs of such protective custody, when defense counsel had already declined to ask any questions about Wright's then-current status in protective custody.

Therefore, Green cannot show that the undisclosed evidence would have created a reasonable probability that the result of his trial would have been different. Except for being placed in protective custody, there is no indication that Wright received any other benefits or promises in exchange for his agreement to testify. Wright identified Green as the perpetrator on the day of the crime, long before he received or was promised any benefits. Furthermore, Wright was not the sole witness to the shooting. Another witness, Steven Brown, also identified Green as a participant in the murder.

**50**

## B. *Juror Misconduct*

■ In order to show that he has been denied his Sixth Amendment right to an impartial jury and thus to obtain a writ of habeas corpus, a petitioner must first show that the juror failed to honestly answer a material question on *voir dire.* He must then demonstrate that a correct response would have provided a valid basis for a challenge for cause by showing that the correct response, if given, would have affected the juror's impartiality. *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548 at 556, 104 S.Ct. 845 at 850, 78 L.Ed.2d 663 (1984).

■ To determine whether bias sufficient to warrant a challenge for cause exists, two questions must be asked and answered: "are there any facts in the case suggesting that bias should be conclusively presumed; and if not, is it more probable than not that the juror was actually biased against the litigant." 464 U.S. at 558, 104 S.Ct. at 851. Petitioner fails to meet this standard.

First, although Tyler intentionally failed to give a truthful answer in response to the question on *voir dire* as to whether she had ever been convicted of a crime, the state court found after a post-trial hearing that her answer was based on reliance on the information provided to her by her attorney and was not a deliberate misrepresentation offered out of any desire to sit on the petitioner's jury. I find absolutely nothing in the record that would lead me to disturb this ruling.

Second, there are no facts in this case that indicate to me that bias on Tyler's part should be conclusively presumed, nor is it more probable than not that Tyler was biased against Green. Tellingly, there was no evidence introduced at the post-trial hearing to show that Tyler was biased in any way against Green, nor can I find any in the record. With regard to the juror misconduct issue, the facts of this case parallel those in *United States v. Langford,* 990 F.2d 65 (2d Cir.1993), where a juror withheld information concerning her prior arrests only to avoid embarrassment, and there was no evidence that she was biased or prejudiced against the defendant.

Petitioner has clearly not met the standard for habeas corpus relief on this Sixth Amendment claim.

## CONCLUSION

For the foregoing reasons, petitioner's petition is dismissed.

IT IS SO ORDERED.