**PRINCE ALBERT NEAL, Plaintiff**

v.

**SANKERDAIY JOHN, Defendant**

Civil No. 1984/297

District Court of the Virgin Islands

Div. of St. Croix

May 13, 1986

JOHN R. COON, ESQ., ST. CROIX, V.I., *for plaintiff*

BRIAN L. MASONY, ESQ., ST. CROIX, V.I., *for defendant*

O'BRIEN, *Judge*

## MEMORANDUM OPINION AND ORDER

The question before us is whether two instances of juror misconduct have so prejudiced the defendant as to warrant a new trial. We conclude that this case must be retried.

## I. FACTS

Plaintiff Prince Albert Neal sued Sankerdaiy John for malicious prosecution. On November 26, 1985, a jury awarded Neal compensatory and punitive damages totalling $15,000. John now moves for a new trial pursuant to Fed. R. Civ. P. 61 on the grounds that the verdict was tainted by two instances of Juror misconduct

discovered after the trial's conclusion. She moves alternatively for judgment notwithstanding the verdict.

John established during a post-trial evidentiary hearing that after the close of testimony, but prior to deliberations, juror Leatrice Andrews overheard a conversation in which a defense witness stated that he had been paid for his testimony. Andrews also heard, outside the courtroom, that a defense witness had perjured herself. She admitted passing this information to other jurors.

Neal contends that the jurors construed the first statement as a reference to the $30 statutory fee for witnesses because there had been testimony at trial concerning the fee. Alternatively, he asserts that no prejudice resulted from the incident because it was orchestrated by John to assure grounds for a new trial in the event she lost the case. He maintains that the other statement is meritless.

It was also established that juror William Johnson, who was named the panel's foreman, untruthfully denied his acquaintance with three of John's prospective witnesses during voir dire. Only one of these witnesses eventually testified but Johnson admitted that he often drove her to work. Johnson defended his answer on the grounds that he could judge the facts impartially. John claims that this also warrants a new trial because her right to exercise a peremptory challenge was prejudiced.

## II. DISCUSSION

A. *Juror Andrews*

■■ A motion to set aside a jury's verdict on the grounds of misconduct must overcome the established rule that a juror may not impeach his own verdict once the jury has been discharged. McDonald v. Pless, 238 U.S. 264, 267 (1915). But this rule is not absolute. The verdict may be thrown out where a juror has considered extraneous evidence if the party claiming misconduct proves both the instance of misconduct and resulting prejudice. See e.g., Government of the Virgin Islands v. Gereau, 523 F.2d 140, 153–54 (3d Cir. 1975), cert. denied, 424 U.S. 917 (1976); Port Terminal & Warehousing Co. v. John S. James Co., 92 F.R.D. 100, 105 (S.D. Ga. 1981) aff'd 695 F.2d 1328 (11th Cir. 1983).

■■ We will not delay long on the first prong of the Gereau test because John has clearly established the misconduct of juror Andrews. Evidence extrinsic to that introduced at trial may not be considered by the jury. This is because "[o]ne touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 554 (1984) quoting Smith v. Phillips, 455 U.S. 209, 217 (1982). See also United States v. Harry Barfield Co., 359 F.2d 120, 125 (5th Cir. 1966). Andrews compounded this problem when she failed not only to bring the substance of the conversation to the attention of this Court but also repeated it to other jurors.

■■ The question of resulting prejudice is decided under the rule of Mattox v. United States and its progeny that a presumption of prejudice arises from a third party's unauthorized contact with a jury. This presumption can only be rebutted by a showing that the contact was harmless to the complaining party. Mattox, 146 U.S. 139, 150 (1892); Remmer v. United States, 347 U.S. 227, 229 (1959). The failure to show harmlessness necessitates a new trial. E.g., Remmer, supra at 230.

■ Mattox and Remmer were criminal cases but the principle applies with equal force in civil matters. E.g., Hobson v. Wilson, 737 F.2d 1, 47-48 (D.C. Cir. 1984), cert. denied, 105 S.Ct. 1177 (1985) Harry Barfield Co., supra at 124; Link v. Mercedes-Benz of North America, Inc., 618 F. Supp. 679, 685 (E.D. Pa. 1985). The rationale for this presumption is that:

> Extraneous influence on a *sitting juror* might have one or more of several results. It creates a passageway through which information may flow both into and out of the jury room. Contact might intimidate, either obliquely or directly; it might subtly create empathy; it might disclose facts of which the jury ought not to be aware. Contact also might result in disclosure by a juror of confidential information about the jury deliberations, or the impressions of individual jurors. The existence of any communication link between the jury and interested parties thus potentially contaminates the controlled environment irreparably.

Hobson, supra at 48 (emphasis included).

Neal argues, however, that John has the burden to prove actual prejudice and that none occurred because the incident was staged. For want of proof, we must reject the latter contention and find that the contact was indirect and unintentional. Although cases such as Hobson (excused juror questioned by counsel during trial) and Port Terminal (party's bribery offer communicated to juror by his father) may be distinguished on this point, we hold that the presumption of prejudice must arise here.

Andrews overheard a statement that could easily be understood to mean that John had hired a witness to lie under oath in her favor. The juror obviously attached importance to it because she recounted it to fellow jurors. Neal's bare statement that Andrews must have construed the statement as a reference to the statutory witness fee does nothing in our mind to overcome the presumptive prejudice.

Nor can we assume that the issue played no factor in Andrews, and thus the jury's deliberation merely because the incident occurred after the close of testimony. The probable, if not natural, tendency would be to discount the credibility of the witness on the basis of the statement. This is precisely the type of misconduct that irreparably undermines the right of a litigant to a trial by an impartial jury. McDonough Power Engineering, supra at 554. And the same is true of the statement alleging perjured testimony. Accordingly, we hold that the misconduct was prejudicial to the defendant and a new trial must be ordered.

B. *Juror Johnson*

Voir dire examination is a crucial device in ensuring the selection of an impartial jury. It

> . . . expos[es] possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

McDonough Power Equipment, supra at 554.

An untruthful answer to a voir dire question is grounds for a new trial but this is not a per se rule. The critical inquiry is whether a juror is impartial. McDonough Power Equipment, supra at 554. Thus, a new trial will not be ordered where a juror

responds erroneously but in good faith unless the complaining party can "deomonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause." Id.

The jury foreman admitted that his failure to acknowledge his acquaintance with the witness was less than candid. But he also testified that he believed he could judge the facts impartially. We need not take issue with this statement because John has already won a new trial. We note, however, that St. Croix is a small and tightly knit community. Where a case gains the notoriety which surrounded this matter it may very well be impossible to impanel a jury that knows nothing about the parties and their case. Gereau, supra at 153.

 This is not to say that we condone untruthful responses to voir dire questions but rather the burden rests on the complaining party to show that cause for disqualification exists.

C. *Judgment Notwithstanding the Verdict*

 Finally, John moves under Fed. R. Civ. P. 61 for judgment notwithstanding the verdict on the grounds that the verdict was against the weight of the evidence and tainted by perjured testimony. We find the latter accusation groundless. Any merit attributable to the former will be redressed by the new trial.

## III. CONCLUSION

Juror misconduct involving consideration of extraneous evidence warrants a new trial where the complaining party demonstrates prejudice. Similarly, a new trial will be ordered where the moving party shows that but for an untruthful answer to a voir dire question, a juror would have been disqualified for cause. We conclude that a new trial is warranted here under the former standard.

## ORDER

THIS MATTER is before the Court on the motions of defendant Sankerdaiy John for a new trial and for judgment notwithstanding the verdict. The Court having filed its Memorandum Opinion of even date herewith, and the premises considered, now therefore it is

ORDERED:

THAT the motion of the defendant for a new trial be, and the same is hereby GRANTED, and further

THAT the motion of the defendant for judgment notwithstanding the verdict be, and the same is hereby DENIED, and further

THAT trial in this matter is set for the trial period commencing October 6, 1986.