UNITED STATES of America,
Plaintiff,

v.

Akeil GREIG and Richard
Hodge, Defendants.

No. Crim.1999–134.

District Court, Virgin Islands,
D.St. Thomas and St. John.

. Feb. 28, 2001.

Kim Chisolm, Assistant United States Attorney, St. Thomas, U.S.V.I., for the plaintiff.

Claudette V. Ferron, St. Thomas, U.S.V.I., for defendant Richard Hodge.

James M. Derr, St. Thomas, U.S.V.I., for defendant Akeil Greig.

## MEMORANDUM OPINION

MOORE, District Judge.

On June 7, 2000, a District Court jury found Akeil Greig ["Greig"] and Richard Hodge ["Hodge"] guilty of crimes involving possession of a controlled substance analogue with intent to distribute. In furtherance of his effort to obtain a new trial, Greig requested an evidentiary hearing on alleged juror misconduct. (*See* Def. Greig's Mot. for Evidentiary Hr'g, June 9, 2000.) He argued that one of the jurors, Chastity Caines, intentionally lied at voir dire when she indicated that she did not

know Greig. (*See id.*) He further argued that Ms. Caines improperly disclosed extraneous information about Greig to other jury members before deliberation. (*See id.*) Hodge joined in Greig's motion, noting that he was tried together with Greig and that to the extent that Greig's conviction was tainted, Hodge's conviction was similarly tainted. (*See* Def. Hodge's Joinder in Def. Greig's Mot. for Evidentiary Hr'g.)

Greig supported his argument with the affidavit of Marlene Francis, whose sister, Millicent Francis, was an alternate juror. According to the affidavit, juror Francis told her sister Marlene that one of the jurors knew Greig and that Greig was consistently in trouble.

Recalling that no juror acknowledged knowing Greig at voir dire, the Court granted Greig's motion for an evidentiary hearing, which it held in three stages. First, the Court interviewed Millicent Francis on July 21, 2000, who stated that she had indeed talked with juror Caines about Greig during a break before the alternates were excused and the twelve jurors began deliberations. (*See* Tr., Hr'g on Mot. for New Trial, July 21, 2000, at 5.) Ms. Francis asserted that Ms. Caines said she knew Greig, that Greig had a bad reputation, and that Greig once stabbed someone. (*See id.* at 5, 7.) When asked whether other jurors were paying attention to the conversation, Ms. Francis indicated that they were: "Yeah, all of us, yeah. As a matter of fact, it was all of us speaking in some, you know, thing about the case, which we shouldn't have, and then that's when [Caines] said that." (*Id.* at 9.)

Based on this testimony, the Court called juror Caines to a hearing on August 2, 2000. Ms. Caines freely admitted that she and Greig attended a daytime adult education class and that she even talked with him on occasion, yet she did not consider Greig to be a person she "knew." (*See* Tr., Hr'g on Mot. for New Trial, Aug. 2, 2000, at 8, 10.) Ms. Caines denied expressing any opinion about Greig's guilt or reputation or telling anyone that he had been involved in a stabbing. (*See id.* at 10.)

With this conflict in the testimony of alternate juror Millicent Francis and juror Chastity Caines, the Court summoned the remaining jurors and two alternates to a hearing on August 28, 2000, to determine whether any of them heard Caines improperly disclose extraneous and prejudicial information about Greig to fellow jurors before deliberation.

Having interviewed eleven of the twelve jurors and all three alternate jurors concerned and having found Greig's allegations unsupported by the evidence, the Court rules that a new trial is not warranted.

### Voir Dire

Akeil Greig asserts that juror Caines intentionally lied at voir dire when she did not acknowledge that she knew Greig and that such "deliberate concealment or purposefully incorrect responses during voir dire" suffice to show that he was prejudicially impaired in exercising his right to peremptory challenge. (*See* Def. Greig's Mot. for Evidentiary Hr'g at 2.)

The United States Supreme Court has "long recognized the role of the peremptory challenge in reinforcing a defendant's right to trial by an impartial jury." *United States v. Martinez–Salazar*, 528 U.S. 304, 311, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). An impartial jury is one "capable and willing to decide the case solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Although voir dire serves as one of the "safeguards of juror impartiality," the process is "not infallible." *Id.; see Brown v. United States*, 411 U.S. 223, 231–32, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973) (" '[A litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials.")

The proper test to be applied here, however, is not whether the defendant lost a chance at a peremptory challenge, but rather, whether the defendant was tried by an impartial jury. *See Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988); *see also Martinez–Salazar,* 528 U.S. at 307, 120 S.Ct. 774 (peremptory challenges are "one means to achieve the constitutionally required end of an impartial jury"). To obtain a new trial on the grounds alleged here, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further to show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *United States v. Richards,* 241 F.3d 335, 344 (3d Cir.2001); *see also Government of the Virgin Islands v. Sampson,* 94 F.Supp.2d 639, 650, 42 V.I. 247, 266–67 (D.V.I.App.Div.2000).

In *McDonough,* the Supreme Court addressed the need for truthful answers to voir dire questions:

> Voir dire examination serves to protect [the] right [of juror impartiality] by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on voir dire may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

464 U.S. at 554, 104 S.Ct. 845. In that case, Billy Greenwood and his parents sued a lawnmower manufacturer after Greenwood lost both his feet in a lawnmower accident. *See id.* at 549, 104 S.Ct. 845; *id.* at 558 n. \*, 104 S.Ct. 845 (Blackmun, J., concurring). During voir dire, Greenwood's attorney asked the potential jurors:

> Now, how many of you have yourself or any members of your immediate family sustained any severe injury, not necessarily as severe as Billy, but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering, that is you or any members of your immediate family?

*Id.* at 550, 104 S.Ct. 845. One of the potential jurors who eventually became an actual juror, Ronald Payton, did not respond to the question. Later, Greenwood's attorney discovered that Payton's son had broken a leg when a truck tire exploded. *See id.* at 551, 104 S.Ct. 845. Having lost the case, Greenwood moved for a new trial based on, among other things, Payton's failure to respond to the above-quoted voir dire question. The district court denied the motion and Greenwood appealed.

Despite the obvious severity of a broken leg, the Supreme Court found that Payton's mistaken, but *honest,* answer would not warrant a new trial. *See id.* at 555–56, 104 S.Ct. 845 (noting Payton's apparent belief that his son's broken leg did not result in the "disability" or "prolonged pain and suffering" referred to in the voir dire question). The Court concluded that in order to obtain a new trial, the parties must demonstrate, as an initial matter, that "a juror failed to answer honestly a material question on voir dire." *Id.* at 556, 104 S.Ct. 845. Otherwise, to invalidate the jury's verdict on the basis of an honest answer would be "to insist on something closer to perfection than our judicial system can be expected to give." *Id.* at 555, 104 S.Ct. 845.

If the juror's failure to respond to the *McDonough* voir dire did not warrant a new trial, Caines' silence during the *Greig* voir dire surely does not. During voir dire in this case, the Court asked potential jurors the following question: "Do any of you know, or are you related to Mr. Akeil Greig?" (Trial Tr., Vol. 1 at 43.) Juror Caines did not speak up at voir dire

because she interpreted the question as asking whether she knew Greig personally. Juror Caines explained, "When we went to day adult, like I said we were just students. And we said 'hi' occasionally. And usually we would end up talking. But I don't know him personally like that." (Hr'g Tr., Aug. 2, 2000, at 8.)

This is not an unreasonable interpretation, and the Court cannot conclude that juror Caines' answer was dishonest. What it means for one person to know another is influenced by the characteristics of the community in which one lives. To "know" a person in a community of millions, such as New York City, means something different than to "know" a person in the small community of St. Thomas, Virgin Islands. St. Thomas consists of thirty-two square miles of land and is home to around 50,000 people. Many people in St. Thomas who have lived on the island for years "know" many island residents whom they do not know personally. Thus, it would be reasonable for a St. Thomian to acknowledge knowing a person only if he or she knows the person personally.

Juror Caines' interpretation of the question is further validated by alternate juror Millicent Francis' failure to respond to the same voir dire that she "knew" defendant Greig. When asked at the evidentiary hearing if she knew either of the defendants, Ms. Francis admitted that she in fact had known Greig: "I think I heard of the name Akeil Greig, but I don't know him like that.... Yeah. As a matter of fact, I think, I think he has a child by a girl I know. I'm not sure because *we're not close like that.*" (Hr'g Tr., July 21, 2000, at 21 (emphasis added).) Ms. Francis also has family in the Paul M. Pearson Gardens housing area, where the transaction took place. (*See id.* at 20.) Even though Ms. Francis knew Greig as well as Ms. Caines knew him, if not better, her failure to respond at voir dire shows that

she took the voir dire question to mean the same thing as did Ms. Caines. They both thought the Court was asking whether any prospective juror knew Greig personally. *Cf. McDonough,* 464 U.S. at 555, 104 S.Ct. 845 (pointing to another juror's equally mistaken non-response to the same voir dire question as evidence that the question was susceptible to varied responses depending upon the juror's subjective standards). Thus, the defendants have not met even the initial requirement of "demonstrat[ing] that [juror Caines] failed to answer *honestly* a material question on voir dire." *See id.* at 556, 104 S.Ct. 845 (emphasis added).[1]

Significantly, having attended day adult education class with juror Caines, defendant Greig cannot now claim that her silence prevented him from exercising a peremptory challenge to strike her from the jury. Either Greig did not disclose their acquaintance to his attorney because he hoped Caines would favor him, or he did disclose that he knew Caines, and he and his counsel decided not to challenge her. For whatever reason, Greig neither challenged Caines for cause nor used a peremptory strike to exclude her. Since Greig did not strike Caines before the jury was sworn, he is estopped from claiming, after the jury has found him guilty, that Chastity Caines' honest failure to disclose that she "knew" him warrants a new trial.

In sum, juror Caines' failure to answer the voir dire question was honest, even though arguably mistaken. Therefore, a new trial is not warranted on this ground.

### Extraneous Information

Greig next argues that Ms. Caines improperly disclosed extraneous and prejudicial information about Greig to fellow jury members before they began their deliberations. In particular, Greig is concerned that jurors discussed an unrelated stabbing incident in which he was the alleged

---

1. Moreover, juror Caines' honest answer precludes any need for the Court to address whether a correct response would have provided a valid basis for a challenge for cause. *See McDonough,* 464 U.S. at 556, 104 S.Ct. 845.

assailant, as well as his reputation for being a trouble-maker.

■ In exploring Greig's allegations, this Court questioned fifteen of the sixteen jurors concerned—eleven of the twelve jurors who deliberated and all of the alternate jurors—about their knowledge of any extraneous information discussed among them before the twelve were excused to deliberate. Although the scope of a Court's inquiry into the validity of a jury verdict is very limited, "a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." *See* FED.R.EVID. 606(b). "[A] verdict may be thrown out where a juror has considered extraneous evidence if the party claiming misconduct proves both the instance of misconduct and resulting prejudice." *Neal v. John,* 110 F.R.D. 187, 188 (D.Vi.1986).

■ Taken together, the evidence developed during the three-stage hearing fails to establish any juror misconduct. Ms. Caines flatly denied ever telling Millicent Francis that Greig was involved in a stabbing and was always in trouble. The Court explored with each of the testifying jurors and alternates (all of whom, according to Ms. Francis, were paying attention) whether he or she heard any other juror talk about Greig having a reputation for being in trouble. No juror said that she or he had heard any such discussion. Each juror was also asked whether he or she heard from another juror that Greig once stabbed an individual. Of the jurors questioned, only three recalled hearing anything about Greig's involvement in a stabbing. One of those three jurors believed that he heard about the stabbing, not from another juror, but from an attorney during trial. (*See* Tr., Hr'g on Mot. for New Trial, Aug. 28, 2000 at 55.) The other two couldn't remember when or from whom they heard about it, although one thought perhaps he had heard it "during trial." (*See id.* at 14, 42.) Sure enough, a review

of the trial transcript reveals that in response to a question posed by his counsel on redirect, cooperating witness Yambo Williams testified that at the time of Greig's arrest, the police were looking for Greig in connection with a stabbing. (*See* Trial Tr., Vol. 2 at 203.)

■ The juror who did not testify at the final stage of the evidentiary hearing could not be located and was reported to be off-island. The Court has substantial discretion in determining not only whether an investigation is warranted, but how that investigation is to be conducted. *See Tanner v. United States,* 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987) (holding that the trial court did not err when it refused to hold further evidentiary hearings about the competency of jurors); *see also* WRIGHT, FEDERAL PRACTICE & PROCEDURE: CRIMINAL 2D, § 554 & note 13 (West 1982 & Supp.2000).

Given the overwhelming consistency of the testimony of all the other jurors, the Court does not need the missing juror's testimony to resolve this issue. Moreover, neither defendant has pressed to hear from that juror since the hearing on August 28, 2000, and both have moved for the Court to expedite its review of "the final examination of the various jurors" and to promptly decide these pending motions. (*See* Greig's Mot. for Expedited Review, Oct. 31, 2000, at 1; *see also* Hodge's Joinder in Mot. for Expedited Review, Nov. 6, 2000.)

In sum, there is no credible evidence to support the assertion that any juror improperly disclosed extraneous information about Greig to fellow jury members before they deliberated on their verdict.

### Conclusion

Because juror Caines honestly responded at voir dire, and no juror improperly disclosed extraneous information about Greig to other jury members, the Court

will not grant a new trial for either defendant.