# McDONOUGH POWER EQUIPMENT, INC. *v.* GREENWOOD ET AL.

No. 82–958. Argued November 28, 1983—Decided January 18, 1984

*Donald Patterson* argued the cause and filed briefs for petitioner.

*Gene E. Schroer* argued the cause for respondents. With him on the brief was *Dan L. Wulz.**

JUSTICE REHNQUIST delivered the opinion of the Court.

Respondents, Billy Greenwood and his parents, sued petitioner McDonough Power Equipment, Inc., to recover damages sustained by Billy when his feet came in contact with the blades of a riding lawnmower manufactured by petitioner. The United States District Court for the District of Kansas entered judgment for petitioner upon a jury verdict and denied respondents' motion for new trial. On appeal, however, the Court of Appeals for the Tenth Circuit reversed the judgment of the District Court and ordered a new trial. It held that the failure of a juror to respond affirmatively to a question on *voir dire* seeking to elicit information about previous injuries to members of the juror's immediate family had "prejudiced the Greenwoods' right to peremptory challenge," 687 F. 2d 338, 342 (1982), and that a new trial was necessary to cure this error. We granted certiorari, 462 U. S. 1130 (1983), and now hold that respondents are not entitled to a new trial unless the juror's failure to disclose denied respondents their right to an impartial jury.

During the *voir dire* prior to the empaneling of the six-member jury, respondents' attorney asked prospective jurors the following question:

---

**Jerry L. Beane* filed a brief for Southern Union Co. as *amicus curiae* urging affirmance.

"Now, how many of you have yourself or any members of your immediate family sustained any severe injury, not necessarily as severe as Billy, but sustained any injuries whether it was an accident at home, or on the farm or at work that resulted in any disability or prolonged pain and suffering, that is you or any members of your immediate family?" App. 19.

Ronald Payton, who eventually became a juror, did not respond to this question, which was addressed to the panel as a whole. After a trial which extended over a 3-week period, the jury found for petitioner McDonough.[1] Four days after judgment was entered for petitioner, respondents moved under local Rule 23A for permission to approach the members of the jury. In support of their motion respondents asserted that they were of "information and belief" that juror Payton's son may have been injured at one time, a fact which had not been revealed during *voir dire*. *Id.*, at 68. The District Court ruled that respondents had failed to show just cause to approach the jury. *Id.*, at 73.

Undeterred, the next day respondents filed a second motion for permission to approach the jury, attaching an affidavit from respondent John Greenwood,[2] who asserted that in

---

[1] Although respondents sued only petitioner McDonough, under Kansas law, which applied in this diversity action, the jury was permitted to consider the relative fault of three nondefendants: Jeff Morris, a next-door neighbor who was operating the lawnmower involved in the accident, Jeff's father, and Billy's mother. The jury assessed Billy's damages in the amount of $375,000, and found Jeff Morris 20% at fault, Jeff's father 45% at fault, and Billy's mother 35% at fault. The jury determined that petitioner McDonough's percentage of fault was zero.

[2] It is not clear from the opinion of the Court of Appeals whether the information stated in Greenwood's affidavit was known to respondents or their counsel at the time of the *voir dire* examination. If it were, of course, respondents would be barred from later challenging the composition of the jury when they had chosen not to interrogate juror Payton further upon receiving an answer which they thought to be factually incorrect. See *Johnson* v. *Hill*, 274 F. 2d 110, 115–116 (CA8 1960).

the course of his employment as a Navy recruiter, he had reviewed the enlistment application of juror Payton's son. In that application Payton's son stated that he had been injured in the explosion of a truck tire. The District Court granted respondents permission to approach juror Payton regarding the injuries allegedly sustained by his son. The District Court directed that the inquiry should be brief and polite and made in a manner convenient to the juror. The District Court noted that it was not "overly impressed with the significance of this particular situation." *Id.*, at 89. No provision was made to record the inquiry of juror Payton.

On the same day that the District Court granted respondents permission to approach juror Payton, respondents moved for a new trial, asserting 18 grounds in justification, including the District Court's alleged error in denying respondents' motion to approach the jury. This was the only instance when respondents even tangentially referred the District Court to the juror's failure to respond as a ground for a new trial. Shortly after the parties placed a telephone conference call to juror Payton, the District Court denied respondents' motion for a new trial, finding that the "matter was fairly and thoroughly tried and that the jury's verdict was a just one, well-supported by the evidence." *Id.*, at 106. The District Court was never informed of the results of the examination of juror Payton, nor did respondents ever directly assert before the District Court that juror Payton's nondisclosure warranted a new trial.

On appeal, the Court of Appeals proceeded directly to the merits of respondents' claim that juror Payton's silence had prejudiced their right to exercise peremptory challenges, rather than remanding the case back to the District Court for a hearing.[3] The Court of Appeals simply recited the

_____

[3] Although neither party challenges the propriety of the Court of Appeals' having disposed of the question on the merits, we believe that the proper resolution of the legal issue should be made by the District

recollections of counsel for each party of their conference telephone call with juror Payton contained in their appellate briefs, stating that the "unrevealed information" indicated probable bias "because it revealed a particularly narrow concept of what constitutes a serious injury." 687 F. 2d, at 343. The Court of Appeals assumed that juror Payton had answered in good faith, but stated:

> "Good faith, however, is irrelevant to our inquiry. If an average prospective juror would have disclosed the information, and that information would have been significant and cogent evidence of the juror's probable bias, a new trial is required to rectify the failure to disclose it." *Ibid.* (citation omitted).

---

Court. See *infra*, at 556. Nevertheless, we address the issue in order to correct the legal standard the District Court should apply upon remand.

Both parties apparently agree that during the telephone conversation with juror Payton, he related that his son had received a broken leg as the result of an exploding tire. Counsel for respondents in their brief to the Court of Appeals recalled Payton saying that " 'it did not make any difference whether his son had been in an accident and was seriously injured,' " " 'that having accidents are a part of life,' " and that " 'all his children have been involved in accidents.' " Brief for Appellants in No. 80–1698 (CA10), p. 7. Counsel for petitioners recall Payton as saying that he "did not regard [his son's broken leg] as a 'severe' injury and as he understood the question [the injury] did not result in any 'disability or prolonged pain and suffering.' As far as Mr. Payton is concerned he answered counsel's question honestly, and correctly, by remaining silent." Brief for Appellee in No. 80–1698 (CA10), p. 18.

Nevertheless, the manner in which the parties presented the issue of juror Payton's failure to respond on *voir dire* was highly unorthodox. While considerations of judicial economy might have motivated the Court of Appeals in this case to proceed directly to the issue of the effect of juror Payton's nondisclosure, in cases in which a party is asserting a ground for new trial, the normal procedure is to remand such issues to the district court for resolution. Although petitioner does not dispute respondents' version of the telephone call to juror Payton, it is foreseeable that in another such case, the parties could present the appellate court with a continuing, difficult factual dispute. Appellate tribunals are poor substitutes for trial courts for developing a record or resolving factual controversies.

This Court has long held that "'[a litigant] is entitled to a fair trial but not a perfect one,' for there are no perfect trials." *Brown* v. *United States*, 411 U. S. 223, 231–232 (1973), quoting *Bruton* v. *United States*, 391 U. S. 123, 135 (1968), and *Lutwak* v. *United States*, 344 U. S. 604, 619 (1953). Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing caseload. Even this straightforward products liability suit extended over a 3-week period.

We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered "'citadels of technicality.'" *Kotteakos* v. *United States*, 328 U. S. 750, 759 (1946), quoting Kavanagh, Improvement of Administration of Criminal Justice by Exercise of Judicial Power, 11 A. B. A. J. 217, 222 (1925). The harmless-error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial. See *Kotteakos, supra,* at 759–760. For example, the general rule governing motions for a new trial in the district courts is contained in Federal Rule of Civil Procedure 61, which provides:

> "No error . . . or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict . . . unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding *must* disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." (Emphasis added.)

While in a narrow sense Rule 61 applies only to the district courts, see Fed. Rule Civ. Proc. 1, it is well settled that the appellate courts should act in accordance with the salutary policy embodied in Rule 61. See, *e. g.*, *Keaton* v. *Atchison, T. & S. F. R. Co.*, 321 F. 2d 317, 319 (CA7 1963); *Box* v. *Swindle*, 306 F. 2d 882, 887 (CA5 1962); *De Santa* v. *Nehi Corp.*, 171 F. 2d 696, 698 (CA2 1948). Congress has further reinforced the application of Rule 61 by enacting the harmless-error statute, 28 U. S. C. § 2111, which applies directly to appellate courts and which incorporates the same principle as that found in Rule 61. See *Tipton* v. *Socony Mobil Oil Co.*, 375 U. S. 34, 37 (1963); *United States* v. *Borden Co.*, 347 U. S. 514, 516, and n. 5 (1954).[4]

The ruling of the Court of Appeals in this case must be assessed against this background. One touchstone of a fair trial is an impartial trier of fact—"a jury capable and willing to decide the case solely on the evidence before it." *Smith* v. *Phillips*, 455 U. S. 209, 217 (1982). *Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror's being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

---

[4] The text of 28 U. S. C. § 2111 reads in full:

"On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties."

This provision traces its lineage to the harmless-error provision of § 269 of the former Judicial Code, which was enacted in 1919. Act of Feb. 26, 1919, ch. 48, 40 Stat. 1181; see *Kotteakos* v. *United States*, 328 U. S. 750, 758–762 (1946); C. Wright & A. Miller, Federal Practice and Procedure § 2881 (1973).

The critical question posed to juror Payton in this case asked about "injuries . . . that resulted in any disability or prolonged pain or suffering." App. 19. Juror Payton apparently believed that his son's broken leg sustained as a result of an exploding tire was not such an injury. In response to a similar question from petitioner's counsel, however, another juror related such a minor incident as the fact that his 6-year-old son once caught his finger in a bike chain. *Id.*, at 52. Yet another juror failed to respond to the question posed to juror Payton, and only the subsequent questioning of petitioner's counsel brought out that her husband had been injured in a machinery accident. *Id.*, at 19, 53–54.

The varied responses to respondents' question on *voir dire* testify to the fact that jurors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges. Moreover, the statutory qualifications for jurors require only a minimal competency in the English language. 28 U. S. C. § 1865 (1976 ed. and Supp. V). Thus, we cannot say, and we doubt that the Court of Appeals could say, which of these three jurors was closer to the "average juror" in his or her response to the question, but it is evident that such a standard is difficult to apply and productive of uncertainties.

To invalidate the result of a 3-week trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give. A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination. Whatever the merits of the Court of Appeals' standard in a world which would redo and reconstruct what had gone

before upon any evidence of abstract imperfection, we think it is contrary to the practical necessities of judicial management reflected in Rule 61 and § 2111. We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

Generally, motions for a new trial are committed to the discretion of the district court. *Montgomery Ward & Co.* v. *Duncan*, 311 U. S. 243, 251 (1940). The Court of Appeals was mistaken in deciding as it did that respondents were entitled to a new trial. In the event that the issue remains relevant after the Court of Appeals has disposed of respondents' other contentions on appeal, the District Court may hold a hearing to determine whether respondents are entitled to a new trial under the principles we state here. The judgment of the Court of Appeals is

*Reversed.*

JUSTICE BLACKMUN, with whom JUSTICE STEVENS and JUSTICE O'CONNOR join, concurring.

I agree with the Court that the proper inquiry in this case is whether the plaintiffs had the benefit of an impartial trier of fact. I also agree that, in most cases, the honesty or dishonesty of a juror's response is the best initial indicator of whether the juror in fact was impartial. I therefore join the Court's opinion, but I write separately to state that I understand the Court's holding not to foreclose the normal avenue of relief available to a party who is asserting that he did not have the benefit of an impartial jury. Thus, regardless of whether a juror's answer is honest or dishonest, it remains within a trial court's option, in determining whether a jury was biased, to order a post-trial hearing at which the movant has the opportunity to demonstrate actual bias or, in excep-

tional circumstances, that the facts are such that bias is to be inferred.  See *Smith* v. *Phillips*, 455 U. S. 209, 215–216 (1982); *id.*, at 221–224 (O'CONNOR, J., concurring).

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in the judgment.

I agree with the Court that the Court of Appeals employed an erroneous legal standard to determine whether a new trial was required in this case, and that the Court of Appeals compounded that error by failing to remand the case to the District Court for a hearing and decision on the motion for new trial in the first instance.  I concur only in the judgment, however, because I have difficulty understanding the import of the legal standard adopted by the Court.

The Court of Appeals ordered a new trial because Ronald Payton, who later was chosen as jury foreman, incorrectly answered an important question posed to prospective jurors on *voir dire*.  Specifically, although asked whether any family members had "sustained any injuries . . . that resulted in any disability or prolonged pain or suffering," Payton failed to disclose a previous injury his son had incurred in a trucktire explosion.  The court concluded that, because the information available to counsel during *voir dire* was erroneous, Payton's failure to respond "prejudiced the Greenwoods' right to peremptory challenge."  687 F. 2d 338, 342 (CA10 1982).  It therefore held that the Greenwoods' motion for a new trial should have been granted, and entered judgment granting the motion.

I agree with the Court that a finding that less than complete information was available to counsel conducting *voir dire* does not by itself require a new trial.  I cannot join, however, in the legal standard asserted by the Court's opinion.  In my view, the proper focus when ruling on a motion for new trial in this situation should be on the bias of the juror and the resulting prejudice to the litigant.  More specifically, to be awarded a new trial, a litigant should be required to demonstrate that the juror incorrectly responded to

a material question on *voir dire*, and that, under the facts and circumstances surrounding the particular case, the juror was biased against the moving litigant. See, *e. g.*, *McCoy* v. *Goldston*, 652 F. 2d 654, 659–660 (CA6 1981).

When applying this standard, a court should recognize that "[t]he bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law." *United States* v. *Wood*, 299 U. S. 123, 133 (1936). See also *Smith* v. *Phillips*, 455 U. S. 209, 221–224 (1982) (O'CONNOR, J., concurring). Because the bias of a juror will rarely be admitted by the juror himself, "partly because the juror may have an interest in concealing his own bias and partly because the juror may be unaware of it," *id.*, at 221–222, it necessarily must be inferred from surrounding facts and circumstances. Therefore, for a court to determine properly whether bias exists, it must consider at least two questions: are there any facts in the case suggesting that bias should be conclusively presumed; and, if not, is it more probable than not that the juror was actually biased against the litigant. Whether the juror answered a particular question on *voir dire* honestly or dishonestly, or whether an inaccurate answer was inadvertent or intentional, are simply factors to be considered in this latter determination of actual bias.* I therefore cannot agree with the Court when it

---

*The Court of Appeals recognized several other factors in this case, not completely acknowledged by the Court's opinion, which might suggest that juror Payton was biased or that his potential bias resulted in prejudice to the Greenwoods. For example, by claiming during his informal examination after trial that "having accidents are a part of life," Payton may have displayed insufficient sensitivity to the Greenwoods' claims in this product liability action. This potential bias could only have been exacerbated by the fact that Payton served as foreman of the jury. Moreover, the jury initially returned a verdict assessing $0.00 in damages despite the fact that Billy Greenwood lost both his feet in the lawnmower accident; only upon reconvening after being admonished by the trial judge did the jury assess damages totaling $375,000. These factors should be considered along with any other relevant facts and circumstances by the District Court on remand.

asserts that a new trial is not warranted whenever a prospective juror provides an honest answer to the question posed. Cf. *ante*, at 556.  One easily can imagine cases in which a prospective juror provides what he subjectively believes to be an honest answer, yet that same answer is objectively incorrect and therefore suggests that the individual would be a biased juror in the particular case.

Given the nature of this legal standard, and given that no claim is raised in this case that bias should be conclusively presumed, the Court of Appeals clearly erred by deciding the issue of juror bias itself rather than remanding the issue to the District Court for a hearing and decision in the first instance.  Motions for new trial on the basis of juror bias are left to the sound discretion of the trial court, and its determination should not be lightly disturbed by an appellate court.  This is especially true when decision on the motion turns, as it does here, on the particular facts and circumstances involved.  See *ante*, at 551–552, n. 3, and 556.  The trial court in this case, however, did not reach the point of exercising discretion because it never was notified about the results of the informal examination of juror Payton.  Accordingly, the case should be remanded to the District Court for a hearing and decision consistent with the principles outlined above.