# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL WAYNE WILLIAMS,
            *Petitioner-Appellee,*

v.

PAGE TRUE, Warden, Sussex 1 State
Prison,

            *Respondent-Appellant.*

No. 02-1

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-96-529-3)

Argued: June 3, 2002

Decided: June 21, 2002

Before WILKINSON, Chief Judge, and NIEMEYER and
WILLIAMS, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert Quentin Harris, Assistant Attorney General,
OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for
Appellant. John Henry Blume, III, Columbia, South Carolina, for
Appellee. **ON BRIEF:** Jerry W. Kilgore, Attorney General of Vir-
ginia, OFFICE OF THE ATTORNEY GENERAL, Richmond, Vir-
ginia, for Appellant. James E. Moore, CHRISTIAN & BARTON,

L.L.P., Richmond, Virginia; Barbara L. Hartung, Richmond, Virginia, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Michael Wayne Williams was convicted of two capital murders and sentenced to death. After his appeals in state court failed, Williams filed a petition for a writ of habeas corpus in federal district court, contending, *inter alia*, that a juror had failed to reveal a possible source of bias during voir dire and requesting an evidentiary hearing. The district court denied the request for an evidentiary hearing and dismissed the petition. We affirmed. *Williams v. Taylor*, 189 F.3d 421 (4th Cir. 1999). The Supreme Court affirmed in part and reversed in part, *Williams v. Taylor*, 529 U.S. 420 (2000), and ordered that Williams be given an evidentiary hearing to explore the issue of juror bias. After that hearing, the district court determined that Williams' right to a fair and impartial jury had been violated. The district court therefore granted the writ and ordered that Williams be retried. In view of the Supreme Court's remand order and the findings of the district court pursuant thereto, we affirm.

I.

Michael Wayne Williams was convicted and sentenced to death for the murders of Mary Elizabeth and Morris Keller, Jr. *See generally Williams*, 529 U.S. 420; *Williams*, 189 F.3d 421. On February 27, 1993, Williams and his friend, Jeffrey Cruse, went to a rural area in Cumberland County, Virginia with the intention of robbing a nearby store. Upon discovering that the store was closed, Williams suggested that they go to the Keller home and rob them. Williams, who had at one time lived down the street from the Kellers, told Cruse that the

Kellers would have "a couple thousand dollars." When they reached the Kellers' home, Cruse knocked on the door. Mr. Keller answered and Williams and Cruse forced their way into the house. After entering, Williams forced the Kellers into the kitchen and had them remove all of their clothing. Williams remained with the Kellers while Cruse went looking for valuables and money. Williams and Cruse then raped Mrs. Keller. Afterwards, the Kellers were ordered to shower and dress. The Kellers were then led to a thicket down a dirt road where they were shot multiple times by both Williams and Cruse. Williams and Cruse then returned to retrieve the property they had decided to steal and to set fire to the Kellers' home.

Williams was arrested and charged with rape, robbery, abduction, and the capital murder of both of the Kellers. At Williams' trial, Cruse testified against him, claiming that Williams was the mastermind of the murders, that Williams had raped Mrs. Keller, shot Mr. Keller at least twice, and shot Mrs. Keller several times after she had been shot once by Cruse. Williams took the stand in his own defense and admitted that it was his idea to rob the store and set fire to the Keller home. Williams also admitted firing the first shot at Mr. Keller, but he denied raping Mrs. Keller, firing any additional shots, or instigating any other parts of the crime. Despite these denials, evidence admitted at trial showed that the seminal fluid found on Mrs. Keller's body matched the DNA of both Cruse and Williams. The jury convicted Williams on all counts and he was sentenced to death.[1]

After his appeals to the Virginia state courts were unsuccessful, Williams filed a petition for a writ of habeas corpus in federal district court. Williams raised three main claims for the first time in that petition: (1) that the prosecution had violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose a report of a pretrial psychiatric examination of Cruse; (2) that the trial was rendered unfair by the seating of a juror who at voir dire had not revealed possible sources of bias; and (3) that a prosecutor had committed misconduct in failing to reveal his knowledge of the juror's possible bias. The district court granted Williams an evidentiary hearing on these three claims.

---

[1]Ultimately, Cruse pleaded guilty to the capital murder of Mrs. Keller and the first-degree murder of Mr. Keller and was sentenced to life imprisonment.

The Commonwealth appealed the grant of the evidentiary hearing. This court granted an emergency stay and remanded the case so that the district court could reconsider its order in light of the requirements of 28 U.S.C. § 2254(e)(2), as amended by the Antiterrorism and Effective Death Penalty Act of 1996. On remand, the district court vacated its order and dismissed Williams' petition. We affirmed. *Williams*, 189 F.3d 421. The Supreme Court granted certiorari to determine whether § 2254(e)(2) precluded Williams from receiving an evidentiary hearing. *Williams*, 529 U.S. at 429. The Supreme Court affirmed in part, upholding the denial of the evidentiary hearing on the *Brady* claim, and reversed in part, overturning the denial of the evidentiary hearing on the juror bias and prosecutorial misconduct claims. *Id.* at 440-44.

We remanded the case to the district court and an evidentiary hearing was held on October 4, 2000. At the hearing, it was established that during voir dire, the trial judge asked prospective jurors whether any of them was related to Deputy Sheriff Meinhard, who had investigated the crime scene, interrogated Cruse, and would become the prosecution's first witness. Juror Bonnie Stinnett gave no answer. And it was understood that no response was the equivalent of a negative response. However, Stinnett had in fact been married to Meinhard for approximately seventeen years and had four children with him.

Furthermore, during voir dire, the jurors were asked whether they or any members of their immediate family had been represented by any of the prosecutors or defense attorneys. Stinnett once again gave no response, and by doing so, failed to reveal that one of the prosecutors, Robert Woodson, Jr., had been her attorney during her 1979 divorce from Meinhard. Woodson also failed to reveal to the court that he had represented Stinnett in her divorce or that he knew that Stinnett and Meinhard had at one time been married. Both Stinnett and Woodson denied any wrongdoing and contended that they had not attempted to mislead the court.

On January 24, 2002, the district court granted the writ and ordered a new trial for Williams. The district court found, *inter alia*, that Stinnett's responses to voir dire were "intentionally misleading and obstructed and/or impeded the purpose of voir dire." The court concluded that "Stinnett was not a fair and impartial juror." Moreover, the

court concluded that both Woodson and the other prosecutor knew that Stinnett had been married to Meinhard and that both "acted improperly and in violation of their prosecutorial obligations" by not revealing that information. Based on these findings, the district court concluded that Williams' "fundamental constitutional right to a fair and impartial jury [had] been violated" and therefore, granted the writ. The Commonwealth appeals.

## II.

The Commonwealth first notes that we are reviewing a final state court judgment on collateral attack, a context in which deference is most appropriate. The Commonwealth then attempts to put a positive face on Stinnett and Woodson's conduct. It argues that Stinnett's response on voir dire was literally accurate because Stinnett's divorce from Meinhard occurred fifteen years before Williams' trial and because Stinnett was, in fact, no longer related to Meinhard. And with respect to Woodson, the Commonwealth asserts that Woodson believed that Stinnett was no longer related to Meinhard, and that he simply forgot his involvement in her simple no-fault divorce. The Commonwealth further suggests that allowing this claim to succeed would encourage searching inquiries into long-past incidents in the private lives of jurors, thus increasing the burdens of jury service to an unwarranted extent. Moreover, the Commonwealth contends that the district court did not find that Stinnett was actually biased against Williams in this case. And it notes that when Williams testified in his own defense at trial, he admitted suggesting the robbery, shooting Mr. Keller, and deciding to burn down the house. As such, the Commonwealth seemingly contends that the evidence of guilt presented at trial was overwhelming and that a new trial is not warranted.

We do not dismiss such arguments lightly, especially in a case where the evidence against the petitioner is so strong. At the end of the day, however, the Commonwealth's arguments fail to take sufficient account of the terms of the Supreme Court's remand. That remand ordered that Williams be given an evidentiary hearing and directed that, "in light of cases such as *Smith* [*v. Phillips*, 455 U.S. 209 (1982)]," both this court and the district court "take due account of the District Court's earlier decision to grant an evidentiary hearing

based in part on its belief that 'Juror Stinnett deliberately failed to tell the truth on voir dire.'" 529 U.S. at 444 (quoting district court).

While the Commonwealth contends that the district court erred by failing to find actual bias as required by *Smith*, we believe it parses too finely the district court's decision. While it is true the district court never used the term "actual bias," the district court did find that Stinnett's voir dire responses were "intentionally misleading" because for unknown reasons, she "very much wanted to be on the jury" and "realized that revelation of her connections . . . might jeopardize her chances of being on that jury." Most importantly, the district court squarely held that "Stinnett was not a fair and impartial juror." In addition, the district court found that Woodson knew of Stinnett's prior marriage to Meinhard and that his "silence affected Williams' fundamental constitutional right to an impartial jury and denied him due process of law."

As the Supreme Court explained, an evidentiary hearing was necessary in this case because "[i]t may be that [Williams] could establish that Stinnett was not impartial or that Woodson's silence so infected the trial as to deny due process." 529 U.S. at 442 (internal citations omitted). Under the facts of this case, the district court found both that Stinnett was not impartial and that Woodson's silence had served to deny Williams his due process rights.[2] Given the Supreme Court's directions and the district court's findings pursuant thereto, the judgment of the district court must be

*AFFIRMED*.

---

[2]In view of the district court's findings that "Stinnett was not a fair and impartial juror" and that Woodson "acted improperly and in violation of [his] prosecutorial obligations," we see no need to address the Commonwealth's alternative arguments that the district court erred in analyzing Williams' juror bias claim under *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548 (1984), and in finding that Williams had also demonstrated implied bias on the part of Stinnett.