**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Max Clark TANNER, Defendant–**
**Appellant.**

**United States of America,**
**Plaintiff–Appellant,**

v.

**Max Clark Tanner, Defendant–**
**Appellee.**

**Nos. 02–10661, 03–10002.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 6, 2004.

Decided Jan. 25, 2005.

Robert E. Lindsay, Esq., Alan Hecht-kopf, Attorney, S. Robert Lyons, Esq., U.S. Department of Justice Tax Division/Appellate Section, Washington, DC, for Plaintiff–Appellee and Defendant–Appellant.

Robert L. Storrs, Attorney at Law, Phoenix, AZ, Max Clark Tanner, Las Vegas, NV, for Defendant–Appellant and Plaintiff–Appellee.

Before: D.W. NELSON, KLEINFELD, and GOULD, Circuit Judges.

## MEMORANDUM *

█ The wire and mail fraud counts and the related conspiracy counts did indeed state an offense, so the judge did not err by denying the motion to dismiss those counts. Under 18 U.S.C. § 1346, "honest services" fraud is not limited to public officials.[1] Regardless of whether the pump-and-dump salespeople's customers were beneficiaries of a fiduciary duty, the salespeople owed the customers an ordinary fraud duty to not lie to them about the stock they were selling to them.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. *United States v. Frega,* 179 F.3d 793, 802 (9th Cir.1999) (holding that 18 U.S.C. § 1346 reinstated the intangible rights doctrine that existed prior to *McNally v. United States,* 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987)).

Therefore, the fraud Tanner was accused of amounted to a denial of the brokers' honest services to their customers. We need not consider any facial challenge because, as applied in this case, the indictment stated a crime.

■ The district court did not err in denying the motion for a new trial based on the jury foreman's responses to questions, because none of the questions called upon the jury foreman to disclose that he had nearly been sucked into a Cayman Island reinsurance fraud.[2] Had a question elicited this response, it would not have furnished the basis for a challenge for cause.[3] Therefore, the district court's refusal to hold an evidentiary hearing was not an abuse of discretion.[4]

■ The district court did not abuse its discretion in denying Tanner's motion to sever the tax counts from the securities counts, because Tanner did not provide specific testimony that he would present about the tax counts and he did not explain why he could not testify as to the securities counts.[5]

■ There were no improper remarks during closing argument. The prosecutor's comments about "lies" referred to the instances that the prosecutor had previously identified where Tanner had lied in furtherance of the fraud. The comment that Tanner was a "con artist" referred to

Tanner's lawyer's likening of Tanner's role in the fraud to an "artist" who asks an art broker or dealer to locate a buyer for a painting. The statements were not impermissible vouching.[6] The prosecutor also did not impermissibly comment on Tanner's failure to testify.[7] The prosecutor's comment that "[n]obody testified to that" was neither "manifestly intended to call attention to the defendant's failure to testify," nor was it "of such character that the jury would naturally and necessarily take to be a comment on the failure to testify."[8] Instead, the prosecutor was referring to the lack of evidence supporting Tanner's good faith defense to the tax counts.

There was sufficient evidence to convict Tanner on all counts at issue. The jury could conclude that Tanner knew of the boiler room and pump-and-dump operation, and made the wire transfer kickbacks to the boiler room brokers. The jury could believe Ruggiero's testimony. The jury could also conclude that Delta Financial Resources Corporation, Inc. was a sham corporation created for "illegitimate purposes" by Tanner.[9]

The district court did not abuse its discretion in formulating the jury instructions. Considered in context with all the other instructions,[10] use of the sham instruction was proper. The jury was properly instructed on the elements of the charged offenses and was instructed that it

2. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984).

3. *Id.*

4. *United States v. Hanley*, 190 F.3d 1017, 1031 (9th Cir.1999).

5. *United States v. DiCesare*, 765 F.2d 890, 898 (9th Cir.1985).

6. *United States v. Garcia–Guizar*, 160 F.3d 511, 520 (9th Cir.1998).

7. *See Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

8. *United States v. Castillo*, 866 F.2d 1071, 1083 (9th Cir.1988).

9. *Kleinsasser v. United States*, 707 F.2d 1024, 1027 (9th Cir.1983).

10. *Cupp v. Naughten*, 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

had to find that the defendant acted willfully.

Because the Supreme Court's decision in *United States v. Booker*[11] changes the context in which district judges impose sentences, review of this sentence imposed under pre-*Booker* law is unnecessary. We remand so that the district judge can determine whether the change in the law would make a difference in the sentencing in this case. If the district judge determines that it does, he may vacate the sentence and resentence Tanner.

AFFIRMED IN PART AND REMANDED.

---

**11.** *United States v. Booker,* 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621, 2005 WL 50108 (2005) (Nos.04–104, 04–105).