# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40147

United States Court of Appeals
Fifth Circuit

**FILED**

February 11, 2015

UNITED STATES OF AMERICA

Lyle W. Cayce
Clerk

Plaintiff - Appellee

v.

ARMANDO VILLALOBOS

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:12-CR-374-1

Before REAVLEY, JONES, and ELROD, Circuit Judges.

PER CURIAM:*

The only significant issue in this appeal is whether a juror falsely answered voir dire questions or committed misconduct stemming largely from Facebook posts before and during trial. We find no error and AFFIRM the conviction but REMAND to correct the judgment.

## BACKGROUND

A 2007 FBI investigation into a Cameron County district judge revealed that Cameron County District and County Attorney Armando Villalobos had

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40147

been generating additional income through his position.  The investigation—which included recorded conversations, surveillance, financial records, district attorney documents, and telephone records—resulted in a grand jury indictment on January 7, 2013.  Villalobos was charged with racketeering, in violation of 18 U.S.C. § 1962(c) (count one); RICO conspiracy, in violation of 18 U.S.C. § 1962(d) (count two); and extortion (under color of official right), in violation of 18 U.S.C. §§ 1951 and 1952 (counts three through nine).  After an eleven-day trial, Villalobos was convicted on all counts, with the exception of counts seven and eight.  Villalobos was sentenced to a below-guidelines term of 156 months, three years supervised release, a $600 special assessment fee, a $30,000 fine, and restitution in the amount of $339,000.  Though not mentioned at sentencing, the written judgment included a special condition that Villalobos receive approval from a probation officer before opening new lines of credit or incurring new credit charges.

After the jury verdict had been returned, Villalobos discovered a number of statements made by Juror # 18—both before and during the trial—that Villalobos contends amount to juror bias.

Before trial began, Juror # 18 received a jury summons about which he made a public Facebook post.  On March 16, 2013, Juror # 18 posted: "Got summoned to jury duty to U.S. district federal court on my birthday. That's gotta suck. Thanks Uncle Sam!!!"  A friend commented on the post by stating that juror # 18 should "tell them, IF THEY GOT ARRESTED THEN THAT MEANS THEY ARE GUILTY!!! And also tell them you are Pro-Law Enforcement and I can guaranty [sic] you will not get chosen…Lol."  *Id.*  Juror # 18 said in reply, "I am pro-law enforcement."  *Id.*

On April 22, 2013, Juror # 18 sent an email to the court's clerk asking to be excused from jury service.  Juror # 18 wrote: "I am a very pro law enforcement person. I even considered in the past to be a law enforcement

2

agent, but because of my line of work, I could not. If law enforcement agents arrest a person, it's because they are guilty of a crime. I have zero tolerance for criminals." At the time the email was sent, Juror # 18 did not know if he had been summoned for a civil case or a criminal case. The district court ultimately denied Juror # 18's request.

Juror # 18 appeared as summoned on April 24, 2013. Along with the other venire members, Juror # 18 was given a juror questionnaire that asked about the potential juror's relationship to law enforcement, views of the criminal justice system, and other potential grounds for bias. He responded in the negative to each question. *Id.*

During voir dire, the district court asked additional questions about whether anyone held biases either against criminal defendants or in favor of either the Government or law enforcement. For example, the district court asked whether anyone (1) would have difficulty presuming the defendant to be innocent, (2) would have difficulty requiring the Government to prove the defendant's guilt beyond a reasonable doubt, (3) had a strong bias for or against the Government, and (4) would tend to believe or disbelieve a witness because the witness worked for the Government or was in law enforcement. Juror # 18 did not respond to any of these questions and was selected to serve on the jury and ultimately became the jury foreperson. Once the jury was selected, the court instructed the jurors not to use the Internet or other media to research the case.

On the final day of the trial, Juror # 18 made a Facebook status post that stated: "A ver si hoy termino todo esto," which translates to "Let's see if today I finish all this."

Upon discovering the actions of Juror # 18, Villalobos moved for a new trial based on juror bias and misconduct. Villalobos argued that he was prejudiced by a pro-law enforcement and anti-defendant bias, which was

demonstrated by the juror's Facebook post and email to the court. That bias was then concealed by lies during voir dire questioning. Villalobos also contended that the juror's Facebook post on the last day of trial indicated an intention to get to a verdict as quickly as possible and constituted a violation of the court's rule not to discuss the case online. Villalobos argued that this intent prejudiced him when the jury indicated to the judge that two jurors were uncertain—and that a hung jury was a possibility—but were eventually worn down by the other jurors to agree with the majority view. Villalobos requested a hearing at which all jurors would be questioned. He also moved to subpoena all of the jurors. Ultimately, the district court held an in camera hearing, during which Juror # 18 testified.

During the in camera hearing, the juror responded to questions about his pre-trial Facebook comment, his pre-trial request to be excused from jury duty, his responses to questions during voir dire, and his Facebook status update on the last day of trial.

When questioned about his pretrial Facebook comments, Juror # 18 testified as follows:

Q     All right. What did you mean by saying [in your Facebook comment that] you are pro law enforcement?

A     I am pro law enforcement, meaning that -- that I'm pro law. I mean for the -- for policemen, laws governing our -- our nation. Meaning somebody to protect us. It's not like you're going to be pro lawlessness. I mean, everybody is going to be pro law enforcement.

Q     Okay. And so it had nothing to do with anything to do with what eventually became this trial?

A     No, it didn't.

Q     All right. You're just talking about general enforcement of our laws?

4

No. 14-40147

A      Exactly.

Q      And protection of the citizens?

A      Protection of the citizens.  I mean, who -- who would want to be -- live in a society without law enforcement?


When questioned about his pretrial email requesting to be excused from jury service, Juror # 18 testified as follows:


Q      Now, what was the purpose of you writing that?

A      I was trying to get out of being on jury duty.

Q      All right.  Is -- did it have anything to do with your ability to be fair?

A      No, it did not.

Q      All right.  Did you have something else that you needed to attend to at the time you thought you were going to be on the jury?

A      Yes, I had my cousin's wedding at that time, and I was trying to get out of serving the jury.

Juror # 18 further testified that he responded to the questionnaire truthfully; he responded to the voir dire questions—including the questions about bias—truthfully; he followed the court's instructions during the trial; he based his verdict on the trial evidence; and he believed each juror based his verdict on the evidence.

With regard to his Facebook status update on the last day of trial, Juror # 18 testified that the comment was unrelated to the trial.  Rather, the comment was about the fact that Fridays are generally busy because his wife works additional hours, leaving him with all of the household chores.

5

No. 14-40147

Additionally, he had to complete a quote for his business as a contractor on that particular Friday. Juror # 18 specifically testified that he never posted any comment about the trial and that he did not get any information about the trial from outside sources, including the Internet.

In a written order denying Villalobos's new trial motion, the district court concluded that "[t]here was no support for the allegation that the jury's deliberations were affected in any manner by bias or prejudice."

## STANDARD OF REVIEW

This court reviews the denial of a motion for a new trial, including a motion based on juror bias or misconduct, for abuse of discretion. *United States v. Bishop*, 264 F.3d 535, 554 (5th Cir. 2001). A district court abuses its discretion by making an error of law or by basing its decision on a clearly erroneous assessment of the evidence. *United States v. Ebron*, 683 F.3d 105, 125 (5th Cir. 2012).

Two different legal standards govern those juror cases based on a failure to disclose material facts during voir dire and those based on juror bias and other influences that constitute misconduct and undermine the fairness of the trial.

For a defendant to obtain a new trial based on a juror's responses during voir dire, the defendant must "first demonstrate that the juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984) (establishing the *McDonough* test).[1] "The motives for concealing information

---

[1] The government contends that *McDonough* only applies to voir dire disclosure cases involving objectively verifiable facts, rather than concealed opinions. Instead, the government asserts that the less stringent standard in *United States v. Collins*, 972 F.2d 1385 (5th Cir. 1992)—which dealt with premature expressions of guilt—controls cases where

may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the impartiality of the trial." *Id.*

In this circuit, a defendant seeking a new trial based on juror misconduct must prove (1) misconduct by at least one juror that (2) prejudiced the defendant to the extent that it undermined the fairness of the trial. *See Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992). This court has distinguished between jury panels tainted by outside influence and panels on which the jurors themselves have violated an instruction of the court. "In the former case, 'a presumption of prejudice arises when the outside influence is brought to the attention of the trial court, and it is incumbent upon the Government to rebut that presumption at a hearing.'" *Collins*, 964 F.2d at 415 (quoting *United States v. Webster,* 750 F.2d 307, 338 (5th Cir.1984)). "In the latter case, however, no such presumption arises, and the defendant must demonstrate that jury misconduct prejudiced his constitutional right to a fair trial." *Collins*, 964 F.2d at 415–16.

## DISCUSSION

*Defendant's motion for new trial.*

Villalobos contends that the district court abused its discretion by not granting a new trial based on juror # 18's failure to reveal bias during voir dire. More specifically, Villalobos points to the pre-trial Facebook status and the email asking to be excluded from jury duty as proof that Juror # 18 has a bias in favor of law enforcement, which was then concealed from the parties during voir dire. Villalobos fails to adequately explain why the district court was clearly erroneous in finding that juror # 18 was untruthful only prior to voir

---

jurors are alleged to have failed to disclose opinions on voir dire. Because the government prevails under the more stringent standard in *McDonough*, we need not address this issue.

No. 14-40147

dire, had no bias at the time of voir dire, and therefore did not "fail to answer honestly a material question on voir dire." *McDonough*, 464 U.S. at 556.

In a lengthy order, the district court carefully analyzed the failure to disclose bias issue. The order began by properly laying out the *McDonough* test. The order then scrutinized each allegedly improper action taken by Juror # 18. The district court recognized that juror # 18 had stated he was "pro-law enforcement" on Facebook and reiterated the sentiment in an email to the court asking to be excused from jury duty. Juror # 18 explained in camera, however, that his pre-trial statements had been a misguided attempt to avoid jury service. When asked for clarification about his views, he reiterated that he was pro-law enforcement, but his explanation revealed that he was really pro-law abiding society, one that eschews chaos, rather than pro-police. The district court also noted that his pre-trial statements followed a Facebook friend's advice on how to avoid jury service. Ultimately, the district court found the in camera explanation of jury avoidance credible and determined that Juror # 18's voir dire responses—made under oath—were truthful, and that juror # 18 was not biased against defendants.

Since the district court found Juror # 18 unbiased, a new trial could not be granted under the *McDonough* test. Under *McDonough*, a defendant is required to "first demonstrate that the juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." The district court determined that Juror # 18 was not biased, and without bias, Juror # 18 could not have "failed to answer honestly" material questions about bias. Villalobos disagrees with the district court and argues that the *McDonough* test is satisfied because Juror # 18 was actually biased and that the first prong—failure to answer honestly a material question—is met by Juror # 18's failure to respond to questions about bias on voir dire. Villalobos contends that

the district court's bias determination was clearly erroneous, and the district court's failure to grant a new trial was therefore an abuse of discretion.

The district court was not clearly erroneous in finding that Juror # 18's pre-trial email and Facebook status were attempts to avoid jury duty, rather than manifestations of bias. Under the clearly erroneous standard, if the district court's factual determination is plausible in light of the record viewed in its entirety, it may not be reversed, even if the reviewing court would have weighed the evidence differently. *Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S. Ct. 1504 (1985). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *Id.* at 573–74. The district court determined that Juror # 18's two prior expressions of pro-law enforcement sentiment were actually attempts to avoid jury duty. This determination was based on the fact that the first expression came after a Facebook friend lightheartedly explained how to avoid jury duty. The advice was followed almost verbatim in Juror # 18's email to the court, the second expression of pro-law enforcement sentiment. Furthermore, neither of these expressions was under oath. During the two times Juror # 18 was under oath, on voir dire and during in camera testimony, he did not express bias. Given the context of his pro-law enforcement statements and his in camera explanation, it is entirely plausible that the statements were made to avoid jury duty rather than as an expression of deeply held beliefs. Villalobos's only argument is that the in camera explanations of Juror # 18's statements should not be trusted and that the original pro-law enforcement statements must be believed.[2] Villalobos's inferences are not more plausible than the conclusion

---

[2] Curiously, Villalobos argues that Juror # 18 is not trustworthy and his post-trial explanation is not to be believed because "[r]ather than filing a request for an excuse for a genuine reason [to be excused from jury duty], Juror #18 thought that it was prudent to lie to the Court and file a false statement about being biased." If Villalobos concedes that Juror

reached by the district court. Therefore, the district court's bias finding was not clearly erroneous.

Villalobos also asserts that the district court abused its discretion by not granting a new trial based on juror misconduct. Misconduct is covered by the *Collins* test, which requires a defendant prove (1) misconduct by at least one juror that (2) prejudiced the defendant to the extent that it undermined the fairness of the trial. *See Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992). Villalobos contends that he was prejudiced by Juror # 18's inability to follow court instructions to refrain from using the internet. Villalobos, however, incorrectly states the district court's directive; jurors were only barred from internet usage related to the case, not all usage. On the last day of trial, Juror # 18 posted "A ver si hoy termino todo esto . . . . ," which is translated as "Let's see if today I finish all this . . . ." The district court determined that the Facebook post referred to the juror's chores outside of trial.[3] The juror, therefore, broke no rule laid out by the district court. There was no instance of juror misconduct to satisfy the *Collins* test.

The district court did not abuse its discretion in denying the new trial motion.

*Defendant's motion to vacate written judgment.*

---

# 18 lied about being biased pre-trial, then Villalobos has no basis to argue for a new trial based on dishonesty during voir dire, because that would mean he told the truth on voir dire.

[3] This determination is subject to the clearly erroneous standard of review, but because Villalobos misunderstands the court's directive as a flat ban on internet usage, he did not argue that the court clearly erred in determining that the internet usage did not pertain to the case. Yet even if Villalobos had raised the argument, the district court's determination would still survive clear error review. The explanation of the status as pertaining to numerous personal chores is just as plausible as an explanation that the status expressed a desire to put an end to the trial. The trial court was therefore not clearly erroneous in determining that no juror misconduct occurred.

No. 14-40147

Villalobos argues that the district court's written judgment must be vacated to the extent that it requires him to seek pre-approval before incurring new credit charges or opening a new credit line.  The government concedes that there is a conflict between the oral pronouncement of the sentence and the written judgment that followed.  The oral pronouncement never mentioned the following non-mandatory special condition found at U.S.S.G. § 5D1.3(d)(2): "If a fine or restitution amount has been imposed, the defendant is prohibited from incurring new credit charges or opening additional lines of credit without approval of the probation officer."  The written judgment, however, included the condition.  "In this Circuit, it is well settled law that where there is any variation between the oral and written pronouncements of sentence, the oral sentence prevails." *United States v. Shaw,* 920 F.2d 1225, 1231 (5th Cir.1991). Because the district court failed to mention the special condition at sentencing, we REMAND the case for the district court to amend its written judgment to conform to its oral sentence.

**AFFIRMED IN PART, REMANDED IN PART.**