CANADY, J.,
dissenting.
Because I conclude that this Court lacks jurisdiction over Farina’s “Petition Seeking Review of Nonfinal. Order (Capital Case),” and that even if this Court had jurisdiction, Farina would not be entitled to relief on the merits of the petition, I dissent from the majority’s decision to grant relief.
I. Additional Facts
After the- Eleventh Circuit Court of -Appeals 'set aside Farina’s death sentence, but prior to the commencement of the new penalty phase, Farina’s former trial counsel received an anonymous letter on May 12; 2014, statihg:
To whom it may concern:-
I write this with heavy hearth [sic]. The Taco Bell murders were appalling but the treatment of Anthony Farina who did not injure "or kill anyone is also appalling. He is guilty but the punishment is not justified. Life must be given.
Because of inappropriate actions by the court, I am giving info for a new trial. The jury was handpicked. The jury foreman was a very best friend of Gus Sliger. Aso on the jury was one of Gus Sliger’s Party Chiefs Skip (nickname) *458 Campbell. I suspect other connections to Gus Sliger. In other words, John Tanner had a handpicked jury with cooperation with those in charge of the jury notices.
Explore this and you will find out......
John Tanner was the elected state attorney who personally prosecuted Farina at his initial trial in 1992. The same day that Farina’s former- trial counsel received the letter, he mailed it to Farina’s current counsel.
Upon current counsel’s' receipt of the letter, he reviewed the record from the 1992 trial and found that a seated juror named William Campbell stated in voir dire that he worked as a “party chief’ on a surveying crew. According to Farina, when specifically asked by Farina’s trial counsel, Mr. Campbell stated that he worked for Sliger & Associates in Port Orange, Florida. Farina’s- counsel then reviewed the campaign contribution records for John Tanner’s 1988 and 1992 campaigns for state attorney. The records indicate that Sliger & Associates donated $750 to Tanner’s successful4988 campaign and $250 and a $130 in-kind donation of wood to Tanner’s unsuccessful rerelection campaign in 1992. Mr. Campbell did not disclose during voir dire that his employer contributed to Tanner’s campaigns.
Farina’s review of. the record also revealed that the. jury foreman was a man named Mr. Durant. Mr. Durant was specifically asked during voir dire if he had any “friends, associates or relatives” within the court system. Mr. Durant did not disclose that he was friends with Gus Sli-ger, whose company contributed to Tanner’s campaigns.
Just shy of one year after receiving the letter, on May 11, 2015, Farina, using the letter as a basis for his claim, filed a second successive motion -for postconviction relief under rule .3.851,[5] asserting .
that newly' discovered evidence reveals that at least one biased juror was em-panelled in the 1992 proceedings that resulted in’his current convictions and non-capital sentences. Neither the prosecutor in Mr. Farina’s case, nor the empanelled juror in question disclosed the political relationship between the juror’s employer and the prosecutor
and “the jury foreman failed to disclose his close friendship with the-donor to the prosecutor’s campaigns.” Without requiring a response from the State or holding a case management conference, the trial court summarily dismissed the motion as premature on the grounds that Farina’s conviction was “not final for purposes’of filing a successive postconviction motion” because resentencing was pending on the first-degree murder charge. In dismissing the motion without prejudice, the trial court granted Farina leave to amend the motion within thirty days after his-sentence for first-degree murder becomes final. Farina then sought relief in this Court by filing his “Petition Seeking Review of Nonfinal Order (Capital Case)” “under Rule 9.412(b)(2) of 'the Florida Rules of Appellate Procedure.” - :
II. Treatment of the Petition as a Final Order
In treating the petition as an appeal from a final order, the majority ignores the fact that the trial court’s order dismissed Farina’s successive motion without *459 prejudice and granted leave to Farina to amend and refile- the motion after his re-sentencing.
[Tjhis Court has held:
[Tjhe test employed by the appellate court to determine finality of an order, judgment[,j or decree is whether the order in question constitutes an end to the judicial labor in the cause, and nothing further remains to be done by the court to effectuate a termination of the cause as between the parties directly affected.
State v. Gaines, 770 So.2d 1221, 1223-24 (Fla,2000) (quoting S.L.T. Warehouse Co, v. Webb, 304 So.2d .97, 99 (Fla.1974)). Accordingly, “[a]n order which dismisses a complaint with leave to amend is not final.” McGuire v. Florida Lottery, 17 So.3d 1276, 1277 (Fla. 1st DCA 2009) (citing Eagle v. Eagle, 632 So.2d 122 (Fla. 1st DCA 1994)). The order dismissing Farina’s successive motion as premature therefore is not a final order because judicial labor is still required to effectuate a termination of the case. Cf State v. Delvalle, 745 So.2d 541, 542 (Fla. 4th DCA 1999) (“The order granting the Defendant’s 3.800(a) motion is not a final order, as judicial labor, i.e., resentencing, is still required.”).
III. Dismissal of Successive Motion for Postconviction Relief
The majority “disagree^] that [Farina’s] motion should have.-been; dismissed[,j” majority op. at 455, and holds that motions for postconviction-relief filed under rule 3.851that are based on “newly discovered evidence claims that could, result in a new trial, should not be postponed, until after resentencing or the appeal of the sentenced’ majority op., at 456. But this is contrary to the plain. language of rule 3.851. The title of the rule is “Collateral Relief After Death Sentence Has -Been Imposed and Affirmed on Direct Appeal.” (Emphasis added.) And the text of rule 3.851states that it applies
to all postconviction proceedings that commence upon issuance of the appellate mandate affirming the death sentence to include all motions and petitions for any type of postconviction or collateral relief brought by a- defendant in state custody who has been sentenced to death and whose conviction and death sentence have been affirmed on direct appeal. It shall apply to all postconviction motions filed on or after January 1, 2015, by defendants who are under sentence of death.
Fla R.Crim. P. 3.851(a) (emphasis added). Thus, Farina’s second successive motion was not authorized by rule 3.851 because he is not under sentence of death. :
The majority attempts to resolve this conundrum by stating,
While motions for collateral relief under Florida Rule of Criminal Procedure 3.851generally apply to “postconviction proceedings that commence upon issuance of the appellate mandate affirming the death sentence,” litigants filing newly discovered evidence claims are held to strict time limits, or otherwise must demonstrate that they could not have known about the evidence at the time of trial by the exercise of due diligence.
.Majority op. at 455. This statement is problematic for several reasons.
First, under rule, 3.851, the requirement is that “[ajny motion to vacate judgment of conviction and sentence of death shall be filed by the defendant within 1 year after the judgment and sentence become final.” Fla. R.Crim. P. 3.851(d)(1). However, if “the facts on which the claim is predicated were unknown to the movant or the mov-ant’s attorney and could not have been ascertained by the exercise of due diligence,” Florida Rule of Criminal Procedure 3.851(d)(2)(A), then “any claim of *460 newly discovered evidence in a death penalty case must be brought within one year of the date -such evidence was discovered or could have been discovered through the exercise of due diligence[,]” Glock v. Moore, 776 .So.2d 243, 251 (Fla.2001). Of course, these requirements presuppose that the claim is properly brought under rule 3.851 by a defendant who is under sentence of death.
Next, the majority opinion cites Way v. State (Way IV), 760 So.2d 903 (Fla.2000), for -the proposition that “[t]his Court has previously recognized the appropriateness of adjudicating motions based on newly discovered evidence filed after the conviction was final but ‘[pjrior to the resentenc-ing proceeding.’” Majority op. at 456 (quoting Way IV, 760 So.2d at 907-08). But the majority has read something into Way IV that cannot be found there; nowhere in Way IV did we recognize that trial courts should adjudicate newly discovered evidence claims filed under rule 3.851 prior to resentencing. Rather, in Way IV, prior to his resentencing proceeding, Way filed an emergency motion for postconviction relief in the trial court, alleging that the State committed a violation of the mandate of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by withholding exculpatory photographs from the defense. 760 So.2d at 907. The trial court summarily denied the motion and proceeded with the resentencing. Id. On direct appeal — after the resentencing— we affirmed the trial court’s summary denial of postconviction relief based on Way’s Brady claim. Id. at 915. We did not address the propriety or impropriety of the adjudication of a motion for postconviction relief based on newly discovered evidence prior to resentencing and we certainly did not in any way suggest that the summary denial of such a claim forms the proper basis for a direct appeal to this Court prior to resentencing.
IV. Sufficiency of Successive Motion for Postconviction Relief
Even assuming that Farina’s petition could properly be treated as an appeal from a final order and that it would have been appropriate for the trial court to adjudicate Farina’s successive postconviction motion prior to resentencing, I would still affirm the trial court’s summary dismissal because the allegations in Farina’s motion did not provide a legally sufficient basis for relief.
In McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), on which Farina relied in his motion, the United States Supreme Court concluded that when juror bias is discovered after the trial, in order to be entitled to a new trial
a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that á correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a'juror’s impartiality can truly be said tó affect the fairness of a trial.
In his successive motion, Farina described his burden as follows:
Under Florida law, a defendant must satisfy two requirements to obtain relief based on newly discovered and otherwise admissible evidence. First, the defendant must assert facts that were “unknown by the trial court, by the party, or by counsel at the time of trial, and-it must appear that defendant or his counsel could not have known-them by the use of diligence.” Jones, 591 So.2d at 915 (quoting Hallman v. State, 371 So.2d 482, 485 (Fla.1979)); Fla. R.Crim. P. 3.851(d)(2)(A). Second, the defendant must show that “the newly *461 discovered evidence [is] of such nature that it would ■ probably produce an acquittal on retrial.” Jones, 591 So.2d at 915. The Jones standard is also applicable where “the issue [is] whether a life or a death sentence should have been imposed.” Id. Mr. Farina’s claim is analogous to a Jones claim, but the prejudice standard must necessarily be different because the issue before this Court is different than that which faced the Florida Supreme Court in Jones: Mr. Farina need not demonstrate that he would have been acquitted but for the empanelment of the biased juror; rather, he must show, as per McDon-ough, that the revelation of the previously concealed information “would have provided a valid basis for a challenge for cause.” McDonough Power Equip., 464 U.S. at 556 [104 S.Ct. 845].
Farina asserted in his motion that he met the first prong of the Jones standard because “[d]efense counsel could not have known or suspected that a juror would fail to disclose his relationship with the prosecutor ”
[n]or could defense counsel have known or suspected that the prosecutor ... would fail to disclose that a prospective juror was a contributor — as a result of being a high-ranking employee of a local, small business — to the prosecutor’s political campaigns, or, at the very least, that the juror’s direct employer was a political supporter of the prosecutor’s political campaigns.... Furthermore, the existence of political relationships linking the juror to the prosecutor could not have been discovered through the exercise of due diligence within a year of Mr. Farina’s sentences becoming final.
(Emphasis added.)
Farina’s argument that he could not have known that a juror would fail to disclose that he was a contributor to the prosecutor’s campaign is totally irrelevant. Farina claimed not that there was some undisclosed political relationship between the prosecutor and jurors, but that two jurors failed to disclose that a person with-whom they were acquainted had contributed to the prosecutor’s campaigns. Further, Farina does not explain why he did not simply ask Mr. Campbell and Mr. Durant during voir dire whether they knew anyone who had contributed to the prosecutor’s campaigns since he believes that such information would have demonstrated the jurors’ bias against him.
Moreover, Farina cannot establish that had he known at the time of voir dire that Mr. Campbell’s employer and Mr. Durant’s friend contributed to the prosecutor’s campaigns, such information would have provided the basis for a cause challenge. Farina did not allege in his motion that Mr. Campbell or Mr. Durant were even aware of Gus Sliger’s campaign contributions. If they were not aware of the contributions, they certainly could not have disclosed their existence or had any resulting bias towards the State or against Farina. Even if Farina had made such an allegation, to assert that knowledge of Sli-ger’s contributions would have somehow biased Mr. Campbell and Mr. Durant against him would be purely speculative and would not warrant an evidentiary hearing.
V. Conclusion
Because Farina has not been sentenced to death and because the order dismissing his second successive motion for postcon-viction relief was not a final order, his petition is not properly treated as an appeal from a final order denying postconviction relief in a capital case, and I would deny the petition for want of jurisdiction. *462 Even if Farina’s petition could properly be treated as an appeal from a final order denying postconviction review in a capital case, I would still deny- relief on the basis that the trial court did not err in summarily dismissing the successive postconviction motion with leave to amend because the motion was insufficient on its face to demonstrate grounds for relief.
POLSTON, J., concurs.

. The majority labels Farina's second successive postconviction motion as a "motion for a new trial based on newly discovered, evidence alleging potential juror misconduct in the guilt phase of his trial.” Majority op. at 454. The motion was actually titled, "Defendant Anthony Joseph Farina's Successive Rule 3.851 Motion to Vacate Judgment of Conviction and Sentences.”